ERICKSON, Respondent, vs. McGEEHAN CONSTRUCTION COMPANY, Appellant.

*April 7 — May 15, 1900.*

(1) *Reference: Setting aside findings.* (2) *Money had and received.*

1. Where there is ample evidence to support a referee's findings of fact, and no clear preponderance against them, the trial court is not justified in setting them aside.
2. Defendant sublet the construction of certain roadbed to D. under a contract authorizing it to pay D.'s employees and deduct such

payments from the amount payable to him. D. employed plaintiff to run a boarding camp and store. Defendant paid D.'s employees on monthly pay rolls furnished by him, deducting the amount of advances charged to each man including board, etc., furnished by plaintiff, but there was no contract made by defendant with plaintiff, or with D. for his benefit, that it would reserve the amount due plaintiff from D.'s employees and pay the same to plaintiff. When said pay rolls were presented D. owed, and still owes, defendant an amount in excess of all such deductions. *Held*, that plaintiff could not recover as for money had and received the amounts deducted by defendant by reason of the board, etc., furnished by plaintiff. *Sterling v. Ryan*, 72 Wis. 36, distinguished.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

The plaintiff, by his complaint herein, claimed to recover for goods and merchandise alleged to have been sold and delivered by him to the defendant, and for board furnished to divers persons by him at defendant's request, between January 1 and July 20, 1896, amounting in all to $4,232.24, less payments aggregating $3,101.62, leaving an alleged balance of $1,130.62. The complaint also charged an indebtedness for money had and received. The answer was a general denial. The action was tried before a referee. Certain facts were undisputed, and may be stated as follows:

The defendant is a Wisconsin corporation, and was during the year 1896 engaged in grading and building a portion of the roadbed of the Minneapolis, St. Paul & Ashland Railroad Company in the counties of Ashland and Bayfield, in this state. On the 22d of January, 1896, it entered into a written contract with one Dalquist, by which Dalquist agreed to build a certain part of said roadbed, between two and three miles in length, at certain specified rates of compensation, and in said contract it was agreed that whenever, in the opinion of the *McGeehan Construction Company*, it might be necessary to secure to the laborers employed by Dalquist their wages, the construction company was authorized to pay said laborers the amount due them, and deduct such

payments from the amount payable to Dalquist. Dalquist immediately entered upon the work, and employed the plaintiff, *Erickson*, to run a boarding camp and store for the laborers employed, the price of board being fixed at $3.50 per week. *Erickson* had no agreement, personally, with the *McGeehan Construction Company* or its officers prior to entering upon the work or at any time. During the progress of the work the construction company furnished to Dalquist provisions for his camp, merchandise for the store, and other articles necessary for the work, to the amount of $3,101.62, which were charged to Dalquist upon its books as advances, and which compose the credits alleged by the present plaintiff in his complaint in this action. At the end of each month a duplicate pay roll was made up by Dalquist's bookkeeper, and furnished to the *McGeehan Construction Company*, showing in different columns the names of men employed, the time and rate of compensation of each man, the amount to be deducted from each man's wages for board and merchandise furnished from the camp store and medical fees, and the balance due each man. The charges against the men for board and merchandise were in separate columns, and were headed "Board to *O. W. Erickson*," and "Advances, Cash and Merchandise," respectively. In the January pay roll the amounts charged under these two heads were $9.10 and $5.25, respectively, and these amounts were deducted from the pay of the men, and paid by defendant's cashier to *Erickson*, through one Colquhoun, who was Dalquist's bookkeeper and also acted as bookkeeper for *Erickson*. In the February pay roll the columns were $280.70 and $42.10, respectively, and these sums were also paid by defendant's cashier to Colquhoun for *Erickson;* but a few days later $275 of the amount was returned, because it was concluded by *Erickson* and his bookkeeper that it was not due on account of goods and merchandise in transit. These payments were charged to Dalquist

Erickson vs. McGeehan Construction Co.

on defendant's books. In the March pay roll the two items were $616.45 and $96.80, respectively, and *Erickson* (through Colquhoun) claimed a net balance due him of $224.50, but this was not paid, although *Erickson* claims that defendant's cashier gave him a duebill for the amount. Pay rolls were furnished by Dalquist for the months of April, May, June, and July, in all of which there appeared large sums due *Erickson* under the heading of "Board," and also sums advanced in cash or merchandise, but no further payments were made to *Erickson*, the reason being, as stated by defendant, that Dalquist was at all times indebted to the defendant, and had nothing coming to him after the February pay roll was presented. That Dalquist owed the defendant at these times, as stated by defendant's cashier, is not denied, and it also appears without contradiction that in August, 1896, when the transaction between Dalquist and defendant closed, Dalquist was indebted to defendant in the sum of $2,236.60 upon the contract.

While the plaintiff does not claim that he personally made any contract with the *McGeehan Construction Company*, he introduced the testimony of Dalquist and others tending to show a promise by defendant to Dalquist to pay him (*Erickson*) the board and merchandise bill. This testimony is, however, denied by the defendant's officers, and the claim made by them that they dealt only with Dalquist and never agreed to make any payments to *Erickson*, but supposed him simply an employee of Dalquist, and paid him the amounts shown on the January and February pay rolls simply upon request of Dalquist's bookkeeper.

The referee found as a fact that no contract was made between *Erickson* and the defendant, and that the payments made on the January and February pay rolls were simply paid to *Erickson* upon request of Dalquist, and charged to Dalquist by defendant; that no merchandise was sold or board furnished by the plaintiff to defendant, or to any per-

son by defendant's request, and that the defendant had received no money belonging to plaintiff; and from these facts the referee concluded as matter of law that the complaint should be dismissed.

Upon motion the circuit court set aside the referee's findings, and found that the defendant agreed to pay in full all men employed by its subcontractors, and withheld the amount due the plaintiff for board and merchandise furnished the men in pursuance of an agreement between Dalquist, the plaintiff, the defendant, and the men, respectively, and rendered judgment for the plaintiff for the amount claimed in the complaint, with interest; from which judgment the defendant appealed.

For the appellant there was a brief by *Lamoreux & Shea*, and oral argument by *W. F. Shea*.

For the respondent there was a brief by *Tomkins & Merrill*, and oral argument by *Geo. F. Merrill*.

WINSLOW, J. The issues litigated in this case were two in number: (1) Was there a contract made by the defendant with *Erickson*, or with Dalquist for his benefit, that it would reserve the amounts of the board and merchandise bills of the men, and pay the same to *Erickson?* and (2) Has the defendant received moneys which in justice and right dealing belong to *Erickson?*

Upon the first of these questions the referee found from the evidence that no such contract was made. There was ample evidence to sustain this finding, and the fact found was not intrinsically improbable. Giving to the referee's finding that effect to which it is entitled, namely, that it must stand unless against the clear preponderance of the evidence (*Johnson v. Goult*, 106 Wis. 247), we cannot see how the trial court was justified in reversing it. There was ample evidence to support it, and certainly there was no clear preponderance against it. Hence the finding of the referee must stand.

The defendant having made no contract to pay *Erickson* or reserve any moneys for his benefit, it is impossible to see how it can be said to hold any money which, in justice and right, belongs to him.   Its only contract was with Dalquist. When the pay rolls were presented, Dalquist owed, and still owes, it a large amount of money.   It has, in fact, received nothing except that which is its own property, and by no means all of that.   If it be now compelled to pay *Erickson*, it will simply pay him out of moneys which, in justice and right, are its own moneys, instead of out of moneys justly belonging to *Erickson*.   The case of *Sterling v. Ryan*, 72 Wis. 36, which is relied on by respondent, would justify no such judgment, because there the fact was found that there was an agreement participated in by all parties that the laborers' board bills should be reserved by the contractors, and paid to the boarding house keepers.   There being no such agreement in this case, it has no application.

*By the Court.*— Judgment reversed, and action remanded with directions to enter judgment for the defendant upon the findings of the referee.