HUEBNER, Respondent, vs. HUEBNER, Appellant.

*April 11—May 2, 1916.*

*Contracts: Validity: Statute of frauds: Consideration: Damages for breach: Loss of future profits.*

1. An oral agreement on the one side to render personal services and on the other to pay for such services in a certain way is not void for lack of consideration, even though no money be paid at the time, each promise being the consideration for the other.
2. The fact that an oral agreement was originally made more than a year before it was to be performed does not render it void under sec. 2307, Stats., if it was reiterated within such year.
3. Past profits of an established business are a legitimate basis for estimating the future profits of the same business conducted in the same manner; and in a proper case such future profits may be recovered when the plaintiff has been prevented from making them by the wrongful conduct of the defendant.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action for breach of contract. The plaintiff is the widow of the defendant's crippled son, Ben Huebner. The defendant owned a building at 1532 Vliet street, Milwaukee, and operated a saloon therein for some time prior to May 1, 1912, on which date he sold the business, stock, and fixtures to Ben for $2,260, of which $1,000 was paid down, Ben agreeing to pay $45 per month rent for the premises and to pay the balance of the purchase price as he could. July 1, 1912, Ben took out a saloon license in his own name and conducted the business until his death March 16, 1913. The plaintiff took charge of the business with the defendant's consent and assistance after her husband's death. On July 1, 1913, the defendant with plaintiff's consent took out the license for the ensuing year in his own name, and at about this time an oral arrangement was made between plaintiff and defendant as to the future conduct of the business, the terms of which are in dispute. The plaintiff claims that the agreement made about

the 29th of May and reiterated on July 1st was in substance that defendant was to take out the license in his own name and that the plaintiff was to operate the business for him and receive the profits after paying the rent and keeping up the stock, she to pay the balance on the purchase price of the stock and fixtures as she could, and at the end of the license year the defendant to pay back the $2,260 and resume his proprietorship of the stock and business. The defendant claims in effect that he took possession after his son's death and that plaintiff operated the saloon with his assistance thereafter simply as his employee under the arrangement that she was to have the net profits of the business for her work. The evidence tends to show that further payments were made on the original contract of purchase out of the receipts of the business after Ben's death, but the amounts are in dispute. The plaintiff claims that it was entirely paid. Differences arose between the parties as to the management of the business and in February, 1914, the defendant took down the license, closed the place, and deeded the same to his brother. Plaintiff occupied the premises as a residence until April 1st, when she moved out and stored the stock and fixtures. In this action she claims to recover the $2,260 paid for the stock and fixtures as well as damages for breach of the alleged contract by which she was to conduct the business for a year and receive the net profits. The jury returned a special verdict as follows:

"(1) Did the defendant and his son, Bernhard Huebner, Jr., enter into a contract for the sale of the stock and saloon fixtures at 1532 Vliet street, and the whisky in bond, on or about May 1, 1912, in substance as stated in the receipt marked 'Exhibit 3' in this case and signed by *Bernhard Huebner, Sr.?* A. (by the court by consent of counsel). Yes.

"(2) On May 1, 1912, did Bernhard Huebner, Jr., pay to his father upon said agreement the sum of $1,000? A. (by the court by consent of counsel). Yes.

"(3) Upon the decease of Bernard Huebner, Jr., did the plaintiff take possession of the saloon, stock, and fixtures and

continue to operate the saloon under the agreement contained in 'Exhibit 3'?     *A.* Yes.

"(4) By means of and through conversations had between the plaintiff and defendant on and between March 16 and July 7, 1913, did the plaintiff, *Hannah Huebner,* and the defendant agree that the plaintiff should be employed to operate the saloon at said place under said contract of May 1, 1912, for a period of one year under the defendant's license, and that in consideration she should receive the net profits derived from said business?     *A.* Yes.

"(5) If you answer the fourth question 'Yes,' you need not answer this question; otherwise answer this question: Did the plaintiff and defendant on, at, or between any of the dates mentioned in the preceding question, enter into an agreement that the plaintiff should be employed to operate the saloon under the agreement of May 1, 1912, from month to month, under the defendant's license?     *A.* ——.

"(6) Did the plaintiff and defendant enter into an agreement on or about the 29th day of May, 1913, whereby the defendant agreed to pay to the plaintiff July 1, 1914, the sum of $2,260 as a refund of moneys paid upon the stock and fixtures?     *A.* Yes.

"(7) What amount, if any, was paid by Bernhard Huebner, Jr., upon said contract after May 1, 1912, to apply thereon?     *A.* $460.

"(8) What is the total amount of payments, if any, which were made by the plaintiff to the defendant to apply upon the balance owing on said stock and fixtures under the contract of May 1, 1912, up to the time when she moved the stock and fixtures out of the saloon?     *A.* $751.

"(9) Who was the owner of said stock of merchandise and fixtures when they were removed from the saloon by the plaintiff?     *A. Bernhard Huebner, Sr.*

"(10) Did the defendant, *Bernhard Huebner,* at any time after the death of Bernhard Huebner, Jr., agree to credit the plaintiff with the whole purchase price of $2,260 when the same should have been paid, and to take back the said replenished stock and fixtures?     *A.* Yes.

"(11) What amount, if any, is still owing from the plaintiff to the defendant on that stock of merchandise and on the fixtures removed by the plaintiff from the saloon on March 31 and April 1, 1914?     *A.* $39.

"(12) Was the defendant justified, under the existing circumstances and conditions, in removing the license from said saloon and thereby preventing the plaintiff from continuing to operate said saloon under the defendant's license?  A.  No.

"(13) If you answer the foregoing question 'Yes,' you need not answer this question; otherwise answer this question: What damage, by reason of loss of profits, did the plaintiff sustain by reason of the defendant's conduct in removing the license and forbidding her to operate longer thereunder?  A.  $1,085.

"(14) The defendant paid for the city license, United States license, and pool-table license the sum of $240.  How much, if any, of this did the plaintiff repay?  A.  $240.

"(15) What sum, if any, do you find the defendant indebted to the plaintiff for lunches, bar, and cigar account from July 7, 1913, to February 16, 1914?  A.  Nothing.

"(16) If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess the plaintiff's damages in this action?  A.  $3,345."

The trial judge, upon motion for a new trial, changed the answer to the eleventh question from $39 to $49 and ordered a new trial unless the plaintiff elected to reduce the damages found in the answer to the thirteenth question from $1,085 to $500 and take judgment for $2,870 instead of $3,345. The plaintiff accepted the reduction and judgment was ordered for the plaintiff for $2,870 on April 15, 1915. In May following the defendant made a second motion for new trial based on affidavits showing newly discovered evidence. This motion was overruled and judgment entered as previously ordered, from which the defendant appeals.

*Adolph G. Schwefel,* for the appellant.

For the respondent there was a brief by *Curtis & Mock,* and oral argument by *H. K. Curtis.*

WINSLOW, C. J.   But two contentions are argued in the appellant's brief, namely, (1) that the agreement claimed by the plaintiff to have been made between the defendant and herself was void because without consideration, and (2) that

no damages could properly be allowed for loss of profits of the business.    Neither contention can be sustained.

1.   The agreement testified to by the plaintiff, though somewhat remarkable in its terms, is not incredible, and was in effect an agreement to render personal services on the one side and to make payment for them in a certain way on the other.    In such agreements there is no lack of consideration, even though no money be paid at the time.   It is a case of a promise for a promise; each is the consideration for the other. *Olson v. Olson,* 149 Wis. 248, 135 N. W. 836.   If this contract had been made on May 29th alone, it might perhaps be objected that it was not to be performed within a year and hence void under the statute of frauds because not in writing.   Sec. 2307, Stats. 1913.    Plaintiff testified, however, that the same agreement was reiterated July 1, 1913, and, while the jury were not asked whether the contract was reiterated on that date, it must be presumed in support of the judgment that the court so found, no request having been made by the appellant to submit to the jury a question covering this point.   Sec. 2858*m,* Stats. 1913.

2.   The rule is well established in this court that past profits of an established business constitute a legitimate basis upon which to estimate the future profits of the same business conducted in the same manner, and that in a proper case such future profits may be recovered when the plaintiff has been prevented from making them by the wrongful conduct of the defendant.    *Gross v. Heckert,* 120 Wis. 314, 97 N. W. 952; *Forster, Waterbury Co. v. F. MacKinnon M. Co.* 130 Wis. 281, 110 N. W. 226.

No other contentions are made which it is deemed necessary to discuss.

*By the Court.*—Judgment affirmed.