OTT, Appellant, vs. BORING, Executor, Respondent. SAME, Respondent, vs. SAME, Appellant.

*April 20—May 11, 1909.*

*Reference: Review by court: Conclusiveness of findings: Appeal and error: Findings of trial court, when disturbed: "Clear preponderance:" Partnership: Dissolution: Accounting: Valuing assets: Evidence: Good will: Elements.*

1. Findings of a referee, as regards being disturbed by the trial court on review, have the same dignity as findings of that court when challenged in the supreme court for error.
2. On appeal to the supreme court all reasonable doubts are to be resolved in favor of the findings of the trial court, and, unless wrong rules of law have been evidently applied to the evidence, if there appears to be substantial credible evidence in favor of the findings, a clear preponderance of the evidence is required to warrant weighing conflicting evidence and reversal of the findings of the court below.
3. "Clear preponderance" of the evidence requires the preponderance to be so apparent as to manifestly outweigh any probable legitimate influence upon the trier of those advantages for discovering the truth which the reviewing tribunal cannot have.

4. On an accounting to determine the value of firm assets after the death of one partner, it is error for the trial court to disregard the findings of the referee appointed to hear, try, and determine the cause, based on a carefully verified appraisement of the firm property, made in a judicial proceeding, and also verified upon the trial by the same appraisers, and modify such findings, basing such ruling upon the usual inventory and appraisement last made by the deceased for the purpose of determining the state of his business with reference to the condition a year previous. *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 38, distinguished.

5. On an accounting to determine the value of the firm assets after the death of one partner, the survivor is entitled to his share in the whole as an organized going business with its line of customers and connections with sellers as well as buyers, the merchandise, book accounts, and good will, such as there is, which can pass with a transfer of the whole as practically one thing.

6. Although one partner dies, elements of good will remain in the business where there is opportunity for a purchaser to continue the same as a going business as successor of the decedent part proprietor, whose name has for years distinguished it, and opportunity to continue in the old stand, and otherwise to locate so near as to obtain substantial advantages from the reputation of the old business in connection with the old place, and thereby secure more out of the stock and accounts by dealing therewith in the usual way of a going business than in a closing-up transaction.

APPEALS from a judgment of the circuit court for Ashland county: E. RAY STEVENS, Judge. *Affirmed on plaintiff's appeal; modified and affirmed on that of defendant.*

Accounting to determine the value of one fourth the merchandise, book accounts, and going business of a mercantile establishment owned by the plaintiff and Franklin J. Pool at the time of the latter's death, December 16, 1904, pursuant to the judgment of this court on a former appeal,—case reported in 131 Wis. 472, 110 N. W. 824, 111 N. W. 833. The trial was before a referee, who fixed the value of the stock at $71,639.69, that of the book accounts at $7,749.08, and that of the good will at $10,000, aggregating, with the value of some other property and with interest,

$106,635.98, which was found to be subject to such deductions as to leave the net amount for division $74,032.03.

Upon due motions and exceptions the court changed the conclusions of the referee by increasing the value of the merchandise by $39,987.86, making the total thereof $111,627.55, and the value of the book accounts $1,013.67, making the same $8,762.75 instead of $7,749.08, and modified the conclusion of law accordingly.

Due exceptions were taken and motions and rulings made, preserving for review questions treated in the opinion. Both sides appealed.

For the appellant there was a brief by *Sanborn, Lamoreux & Pray,* attorneys, and *Burr W. Jones* and *Horace B. Walmsley,* of counsel, and oral argument by *F. B. Lamoreux.*

*R. Sleight,* for the respondent.

MARSHALL, J. An examination of the record leads to the conclusion that there is an abundance of evidence to support the findings of the referee on each of the three questions of fact passed upon by him, viz.: one as to the value of the stock of merchandise, one as to the value of the book accounts, and one as to the value of the good will of the business, in the aggregate the value of the partnership property possessed by Mr. Pool and *Mr. Ott* at the time of the former's death. Such being the case it seems that the trial court, in making the radical changes of such findings, must have proceeded with erroneous notions of the law governing the matter.

We must assume it was well understood, as the fact is, that findings of a referee have the same dignity, as regards being disturbed by the trial court on review, as the findings of that court have when challenged here as being erroneous; they are not to be disturbed unless against the clear preponderance of the evidence. *Hinz v. Van Dusen,* 95 Wis. 503, 507, 70 N. W. 657; *Johnson v. Goult,* 106 Wis. 247, 250,

82 N. W. 139. Cases have gone so far as to hold that findings of a referee, appointed to hear, try, and determine, have the force of a verdict of a jury and are not to be disturbed if there is any credible evidence to support them; that having been supposed at one time to be required by sec. 2865, Stats. (1898), providing that "when the reference is to report the facts the report shall have the effect of a special verdict." *Dunbar v. Bittle,* 7 Wis. 143; *Briggs v. Hiles,* 79 Wis. 571, 48 N. W. 800. But that rule, early declared and subsequently, as late as *Briggs v. Hiles,* reiterated, has been modified so as to put a referee's findings in the same class with those of a trial court. *Johnson v. Goult, supra; Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 224, 66 N. W. 119; *Leasia v. Penokee L. Co.* 103 Wis. 304, 79 N. W. 224; *Bierbrauer v. Kuhnel,* 122 Wis. 306, 99 N. W. 1018. In *Wittmann v. Berger,* 125 Wis. 626, 627, 104 N. W. 815, the court remarked:

"There certainly is testimony supporting the finding, and we find ourselves unable to say that it is against the clear preponderance of the evidence."

The force of the rule referred to may well be appreciated by reference to the uniform administration of it as to findings of trial courts. All reasonable doubts are to be resolved in favor of such findings, and unless wrong rules of law were evidently applied to the evidence, if there appears to be substantial credible evidence in favor of the findings, it requires a pretty strong case to warrant weighing here the conflicting evidence and determining contrary to the decision below by striking a balance between the major and minor probabilities—the real right of the matter.

It is recognized that there are many things which cannot be spread upon the printed record, but may properly be considered by a trial court and are of great, and often controlling, significance in determining the truth as between conflicts from the mouths of witnesses. As experience shows,

and from the very nature of things, justice is much more likely to be done by leaning pretty strongly upon the initial determination than by endeavoring to treat a disputed matter from an original standpoint. Hence the rule that there must not only be a preponderance of evidence against such determination, but there must be a clear preponderance. The significance of the word "clear" is not always fully appreciated. Manifestly, that requires the preponderance to be so apparent as to manifestly outweigh any probable legitimate influence upon the triers of those advantages for discovering the truth which the reviewing tribunal cannot have. That is indicated by many expressions found in our decisions. For examples, we refer to the following:

"While this evidence might adequately have warranted the contrary, we cannot say that the conclusion reached by the trial court is without evidence in its support, or that such evidence is so overwhelmingly rebutted and overcome as to justify this court, on appeal, in setting that conclusion aside." *Menasha W. W. Co. v. Michelstetter,* 126 Wis. 427, 429, 105 N. W. 927, 928.

Whether the findings are supported by the evidence presents "a question of the character often met with as to whether the trial court properly weighed the evidence. That is one of the most difficult questions which a superior jurisdiction has to deal with as regards overruling a decision of the trial court, where it has the opportunity to meet the witnesses face to face and has other advantages over the court which only has the benefit of a printed history of the trial. We have enlarged upon this subject too many times and too fully to leave anything more which can be helpfully said. A clear preponderance of evidence against a trial court's finding, when such evidence must outweigh that which is in favor of such finding and all the advantages of the trial court which we have referred to, must necessarily be a preponderance so decided as to leave but little room for reasonable doubt on the question." *Rankl v. Schmidt,* 133 Wis. 103, 106, 113 N. W. 423, 424.

"Such preponderance is not effective to call for" disturb-

ing the findings "unless it is sufficiently manifest and convincing to overcome any probable effect, upon the judicial mind, of the appearance of witnesses or other aids, which only the trial court can have, in discovering the truth. . . . It is not improbable that the system requiring that fails to reach a just result in some cases. . . . The rule to which we have referred . . . is unbending. It admits of no exception where right rules of law are applied to the evidence. . . ." _Endress v. Shove,_ 110 Wis. 141, 147, 85 N. W. 651, 653.

"It is one of the unbending rules" of the reviewing jurisdiction that presumptions are to be indulged in favorable to the correctness of the findings of fact to the extent of precluding the disturbance thereof unless the preponderance of the evidence not only appears to be against such findings but decidedly and clearly so. This court does not use balanced "judicial scales for the weighing of evidence. They are weighted down on one side at the start by the probability that the findings of the court involved are right. . . . The rule in that regard has been evolved by long experience of appellate tribunals, and is deemed to be the one most likely in the end to promote the ends of justice." _Von Trott v. Von Trott,_ 118 Wis. 29, 34, 94 N. W. 798, 799.

As we have indicated, the quoted expressions apply as forcibly to the situation of a court of original jurisdiction in reviewing the findings of a referee, as to an appellate court in reviewing those of a trial court. The rule is applied here so often that, in general, where the only question presented for review is, whether the findings are supported by the evidence, and the clear preponderance requisite to disturbance thereof is not significantly apparent, they are treated as verities and the matter closed by a brief statement of the fact without burdening the record with an analysis of the evidence and demonstration of the correctness of the conclusion here. The somewhat lengthy treatment of the matter now is only indulged in because of the more than ordinary importance of the case and the seeming treatment thereof below, as, if the reference had been to take the proofs and report the

same to the court, instead of to hear, try, and determine by findings which should have, by force of the statute, the dignity of a special verdict, as that term has been construed in regard to such matters, or in reviewing the findings wrong rules of law were applied.

There was evidence before the referee, upon one side, of a careful verified appraisement of the property made in a judicial proceeding and verified upon the trial by the several persons concerned therein, who testified at length, and appear, in the main, to have been entirely unprejudiced in the matter, while there was evidence upon the other side, of the usual inventory and appraisement last made of the property by deceased for the purpose of determining the state of the business with reference to the condition a year previous. The evidence, aside from the basis to start from, was not materially different on one side from the other.

The referee apparently regarded the basis made by the appraisers more reliable, in view of all the evidence, than the one depending on the books, while the court regarded the latter the more reliable, and was influenced in that regard by the rule in *F. Dohmen Co. v. Niagara F. Ins. Co.* 96 Wis. 38, 71 N. W. 69, or perhaps the court held the books to be, as a matter of law, the best evidence of the property on hand at the time the deceased made the inventory and appraisal. If so, the rule of that case was misapprehended. There the property had been largely destroyed by fire. As said in the opinion, the only evidence which existed was locked up in the books. Such being the case, it was said, in effect, that, starting with the last inventory and appraisal, the books, upon being verified to contain a history of the business as transacted from day to day, might properly be referred to by a person so as to enable him by their aid to testify as to changes in the stock subsequent to the inventory; that such evidence was proper to be considered under the familiar rule that the best evidence the nature of the case is susceptible of must be pro-

duced. The case did not lay down any arbitrary rule for the establishment of the facts in such a case, nor that the inventory and appraisal and books are, in all cases, the best evidence of the value of a business at any particular time. Here the property in question was appraised with reasonable care soon after Mr. Pool died. It was substantially all in existence at the time of such appraisal. The appraisers were just as competent, perhaps more so, to put a right cash value thereon as Mr. Pool was. They were quite as likely to have made a correct appraisal as the one who was mainly interested in determining the value of the business as compared with its value at the time of the preceding inventory and appraisal.

There are many reasons why the referee may well have regarded the case made by the defendant on the subject of value as reliable as that made by the plaintiff. But it is not thought best to go into the subject in detail. On the whole, it does not seem that there was any good ground for the trial court to have held that the evidence was clearly against the findings of the referee on the question of the value of the merchandise or of the book accounts. It would rather seem that the preponderance of the evidence is in favor of such findings, and that the learned trial court gave to the *Dohmen Case* altogether too much significance in reaching a conclusion. The referee in taking the appraisal made soon after the death of Mr. Pool as a basis to work from, instead of the last inventory and appraisal made by the deceased, did not violate anything said in that case.

On the question of good will we are unable to agree with counsel for defendant, that there is no substantial evidence to support the referee's finding. True, the evidence on the part of the plaintiff from the so-called experts, was given with reference to some elements of good will, which, under the circumstances, could not go with the business, but it is not true that there were no elements that could so go. All the property had

to be considered, the merchandise, the book accounts, and the good will, such as there was, which could pass with a transfer of the whole as practically one thing. The plaintiff was entitled to his share of the whole as an organized going business with its line of customers and connections with sellers as well as buyers. True, the personal element was extinguished by the death of Mr. Pool. True, the advantage of the particular location passed likewise. But there remained opportunity for the purchaser of the going business to continue it as successor of the proprietor whose name had for years distinguished it, and to obtain, if he could, opportunity to continue at the old stand, and otherwise to locate so near as to obtain substantial advantages from the reputation of the business in connection with the old place, and thereby secure much more out of the stock and accounts by dealing therewith in the usual way of a going business than in that of a closing-up transaction,—in short, those elements which naturally attract old customers to resort to the old stand and sellers to do likewise, inhering in the organized business, in a large degree, as it did before Mr. Pool's death. So the evidence of witnesses on one side that there was no element of good will of value after Mr. Pool's death, was as wide of the mark as evidence thereof with reference to elements which perished with his death.

Just what constitutes good will, in the technical sense, in all its aspects, would be difficult to state. It is not necessary in this case to go at length into the subject. We have said enough on this for the purposes of the appeal. Doubtless the referee took the whole situation, as we have viewed it, into account, including the fact that he reduced the value of the merchandise and book accounts to the basis of cash, as if the business were to be presently discontinued and the property turned into its money equivalent. When he came to place a value upon the good will, doubtless he took account of the amount the business was worth as an entirety, with all the

advantages that could legitimately go with it for a continuance thereof, over and above the cash value of the goods and accounts in a winding-up operation, fixing the same at $10,000, making the net value of the entirety for division $74,032.03, whereas such value on the face of things, looking at tangible matters and those substantially tangible, without discounting the appraised value of the merchandise or face of the accounts, was about $85,926.80, and on the basis the court adopted was somewhere around $130,000. In this view we are unable to say the final conclusion of the referee, placing the net value as above indicated, is against the clear preponderance of the evidence.

The foregoing leaves nothing more that need be said on either appeal. The conclusion is that no good reason existed for disturbing the referee's findings of fact in any respect.

*By the Court.*—The plaintiff will not take anything on his appeal. On defendant's appeal the judgment is modified to conform to the conclusions of the referee and affirmed as modified, with permission to the plaintiff, if desired, to enter a modified judgment in the court below accordingly. Costs are allowed to the defendant on both appeals.