MOHS, Appellant, vs. QUARTON and wife, Respondents.

*October 2—November 8, 1950.*

For the appellant there was a brief by *Aberg, Bell, Blake & Conrad* of Madison, and oral argument by *George G. Blake*.

For the respondents there was a brief by *Floyd W. McBurney*, attorney, and *Albert E. Koch* of counsel, both of Madison, and oral argument by *Mr. McBurney.*

HUGHES, J. The evidence was in sharp conflict. The transaction between the parties was entered into in 1941 at a time when the respondent Harold B. Quarton, who was in the service of the federal government in the state department, was to leave shortly for Korea. He was anxious to acquire a home in Madison for his family before leaving, and consulted with appellant, Carl E. Mohs, a real-estate dealer and builder. Mohs showed him several homes, and it was finally agreed that respondents would purchase a lot from Mrs. Mohs at a cost of $2,500 and that Mohs would build a house thereon. The plans were hurriedly put together and the building erected.

Respondents had admittedly paid sums totaling $10,153.50 by the time of trial. The referee found the agreement between

the parties was that the cost of house and lot was to be $10,500. Appellant contends that such finding is unreasonable and not supported by the evidence. Appellant cites the fact that on the back of the blueprint Mrs. Quarton wrote "To be built complete for $10,000," as evidence that cost of construction was regarded by the parties separate from the cost of the lot.

Counsel further argues that it was established upon the trial that Mr. Quarton had billed the United States government $180 for moving his family when the actual expense was but $115.52, and therefore his testimony is unworthy of belief.

It is also advanced that appellant would not have been foolish enough to build this home without profit to himself.

On the other hand, appellant disclosed by his own testimony that prior to dealing with the Quartons he and his wife had refused an offer of $4,000 for the lot which they contended they sold to respondents for $2,500 because the parties who made the offer did not appear to be desirable neighbors. They first asked the Quartons $3,000 for the lot and later sold for $2,500 because the lot was next door to appellant's home and the Quartons then looked like desirable neighbors. It would not be entirely unreasonable for the referee to conclude that if appellant was willing to sell the lot at a loss of $1,500, he might also be willing to build at small or no profit, if such was in fact the basis of his findings.

However, the evidence adduced by the respondents was to the effect that when Mr. Mohs showed Mr. Quarton homes costing $12,000, they both agreed that Quarton could not pay such a price for a home, and that because of that the proposal to build a house on the Mohs lot was suggested.

If there was an agreement to build a home on a lot to be furnished by appellant at a cost of $10,500, then whether the appellant made or lost money on the transaction is immaterial.

In an application to a Madison financial institution for a loan, prepared in the handwriting of Mr. Mohs and executed by the defendants, the cost of the house was stated to be $7,750, the cost of the lot, $2,750. Mohs' explanation of this was that these figures were as high as necessary to support the maximum loan available to Quarton, who was soon to be retired on a reduced income.

Enough of the conflicting evidence has been recited to show that the referee had to determine where the truth lay. The matters stated, while proper to be considered by the referee in determining the credibility of the witnesses, do not render them unworthy of credence as a matter of law.

There seems to be no dispute that the law applicable is that the referee's findings are not to be disturbed unless against the clear preponderance of the evidence. In *Citizens State Bank v. Southern Surety Co.* (1929), 198 Wis. 416, 434, 224 N. W. 720, the court, in discussing a finding by a referee that the bank had no knowledge of the insolvency of the contractor at the time of transactions with it, said:

"This finding was supported by the evidence, notwithstanding the existence of other facts and circumstances from which knowledge of insolvency might be inferred. The finding of the referee, therefore, on disputed evidence, confirmed by the court, cannot be disturbed. *Wojahn v. National Union Bank,* 144 Wis. 646, 129 N. W. 1068; *Goodwin v. von Cotzhausen,* 171 Wis. 351, 177 N. W. 618; *Truelsch v. Miller,* 186 Wis. 239, 202 N. W. 352; *Von Trott v. Von Trott,* 118 Wis. 29, 94 N. W. 798; *Ott v. Boring,* 139 Wis. 403, 121 N. W. 126."

As already pointed out, in the instant case the evidence was in sharp dispute and, conceding that other inferences might have been drawn from the testimony, those drawn by the referee were warranted and are conclusive.

It is next urged that the court erred in allowing defendants damages in the amount by which the house was diminished

in value by reason of the faulty work as against the value if properly built.

Here again counsel concedes that some of the defects were structural and incapable of being remedied without reconstructing a substantial part of the building at great sacrifice of work and material already wrought into the building. It is contended, however, that the court should have separated the items and figured the cost of repairs upon such as could have been repaired, and allowed decreased value on the serious defects only.

Appellant contends that under the rule applied in *Stern v. Schlafer* (1943), 244 Wis. 183, 12 N. W. (2d) 678, the court should have separated those minor faults which could have been corrected from the substantial structural defects and allowed for the first the cost of repairs. The defects found to exist in the instant case were: 1, no calking around masonry; 2, no grouting at top of foundation wall; 3, loose lath and plaster in a bedroom; 4, leak in roof; 5, improper footing under front steps; 6, garage six inches too narrow; 7, crack in marble facing of fireplace; 8, crack in stone veneer resulting from improper support; 9, driveway broken up; 10, furnace unsatisfactory.

Most of these were serious defects. The respondents' witnesses testified that the cracking in wall surfaces and ceiling was due to improper footings and inadequate joist support. Under these circumstances we are of the opinion that any attempt to separate the defects would only lead to confusion and that the trial court properly allowed diminished value as the measure of damages.

There were several small credits claimed by the appellant which he contends the referee and trial court overlooked. We must deem that they were in fact considered and denied.

*By the Court.*—Judgment affirmed.

BROWN, J., took no part.