BEILER and wife, Respondents, vs. KRNAK and wife, Appellants.

*April 4—May 1, 1956.*

For the appellants there was a brief by *Hebert & Smith* of Tomahawk, and oral argument by *Robert G. Hebert.*

For the respondents there was a brief and oral argument by *Robert W. Dean* of Wausau.

MARTIN, J. The Krnaks are owners of the property which is the subject of the land contract. Known as "Shady Shore," it is resort property with 1,200 feet frontage on Lake Alice, a flowage of the Wisconsin river, and includes a main

house, two cottages, and a garage with an apartment. The property was listed for sale by the Krnaks with the United Farm Agency. On December 3, 1953, John Beiler approached Howard Owen, salesman for the agency, with respect to property for sale in that area and "Shady Shore" was one of several properties which Owen showed him.

Beiler and Owen made two trips to the resort on December 3d. On the first visit only Mrs. Krnak was there and after looking over the premises briefly they decided to return in the afternoon when Mr. Krnak would be there. In the discussion had on the second visit Beiler told defendants he had lost his arm in the war and since his handicap made it rather difficult to get a job, he was interested in acquiring a going business to supplement his $275 a month government pension. According to Beiler's testimony, the Krnaks said they had made $900 income from the resort in 1953; that Mrs. Krnak said all the cottages had been filled during the summer season and they always had deer hunters renting them in the hunting season,—

". . . she told me that we'd never have to worry about the business of the resort, because they had it,—it was there."

He further testified that he was told the cottages rented for $28 a week and the apartment for $30; that Krnak said they had a record book containing the names of the tenants in 1953 and when Beiler asked to see it, he was told they did not have it there.

Beiler returned to his home, talked the proposition over with his wife, and about December 23d sent Owen a down payment of $500. On January 2, 1954, Owen took Mr. and Mrs. Beiler to the Krnaks. In testifying to the conversations had in connection with the proposed conditions of the land contract, Mrs. Beiler stated:

"They talked about the income of the resort, and he [Mr. Krnak] said that they had made $900 and they wanted half

of our money that we made on it, we surely would make enough to have some left over after we paid the expenses of the resort."

Owen testified that on January 2d Beiler again asked for the record book which the Krnaks said they would produce but they stated it was in Illinois. He further testified that "everybody" present at the meeting talked about $900 as the income the resort had produced. He stated that at the time the property was listed with him for sale, that was the figure agreed upon with the defendants as income for the year 1952; he had been showing the property for a year and Mrs. Krnak had told a previous prospect that the 1952 income from the resort was $900 to $1,000.

The Krnaks denied having told Owen or the Beilers that the resort produced $900 income, gross or net, in 1952 or 1953.

A sales agreement was signed on January 2, 1954, and Beiler paid the $1,500 balance of the down payment; the land contract was sent to the Beilers and signed on January 14, 1954. Plaintiffs took possession of the property later that month and in August, 1954, commenced this action alleging fraud in inducing them to enter into the contract.

Krnak's income-tax return for the year 1952 showed a gross receipt of $334 and a net of $77 from operation of the resort; his return for 1953 showed a gross of $347 and a net of $71.30.

Fraud must be shown by clear and satisfactory evidence. *Larson v. Splett* (1954), 267 Wis. 473, 66 N. W. (2d) 181; *W. H. Hobbs Supply Co. v. Ernst* (1955), 270 Wis. 166, 70 N. W. (2d) 615. In *International Milling Co. v. Priem* (1923), 179 Wis. 622, 624, 192 N. W. 68, this court held:

"To be actionable the false representation must consist, first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in

fact rely on it and was induced thereby to act, to his injury or damage."

While the Krnaks denied they made any representation that the resort produced $900 income in 1953, there is ample credible evidence in the record upon which to find that they did. Plaintiffs' testimony in that respect is corroborated by that of Howard Owen.

Counsel for Krnak argues that the finding of the trial court that $900 was falsely represented by defendants as *gross* income from the resort operations in 1953 is not supported by the evidence since it is contrary to Beiler's testimony that he understood the $900 figure to be *net* income; but in our opinion this is immaterial. If the $900 figure was gross income, it was almost three times the actual gross; if it was net income, it was over twelve times the actual net. In either case, it was false and misleading.

Beiler was partially disabled; he had a wife and family to support; he wanted a going business which would produce income to supplement his government pension so that he would not need outside employment; and he so advised the Krnaks. The only logical inference from these facts is that the income was intentionally misrepresented for the purpose of inducing the Beilers to purchase.

That plaintiffs relied upon the false representation is also clear from the record. It is true that Beiler entered into the contract even though the Krnaks failed to produce the record book he asked for. However, if the two cottages and apartment were filled in 1953, as the defendants represented, their total rental being $86 a week, the resort would have grossed over $1,000 from the three-month summer season. Beiler was therefore warranted in believing the statement that the Krnaks made $900 from the resort in 1953.

In *Woteshek v. Neuman* (1912), 151 Wis. 365, 138 N. W. 1000, where the defendant had misrepresented the

amount of taxes on property sold to the plaintiff, this court held that, there being nothing suspicious or improbable about the statement made, plaintiff was entitled to rely thereon even though the fact was a matter of record. In this case, the representation of $900 income being entirely consistent with other facts represented by defendants, it was reasonable for plaintiffs to rely thereon, and the trial court was entitled to conclude that they did.

*By the Court.*—Judgment affirmed.