KLEINSTICK and wife, Respondents, v. DALEIDEN and wife, Appellants.

*No. 693 (1974). Submitted on briefs January 7, 1976.—Decided February 23, 1976.*
(Also reported in 238 N. W. 2d 714.)

For the appellants the cause was submitted on the brief of *Kelley, Weber & Bolte, S. C.* of Wausau.

For the respondents the cause was submitted on the brief of *John W. Stevens* of Wausau.

WILKIE, C. J.   The controversy that is the subject of this appeal involves the 1969 sale of the inventory of "Ray's Department Store" located in Edgar, Wisconsin, and owned by Lauretta and Raymond Kleinstick, plaintiff-respondents, to Roger Daleiden and Maureen Daleiden, his wife, the defendant-appellants.

The plaintiffs decided to sell their inventory in late June or early July of 1969. They contacted Archie Newton, an area realtor and auctioneer, and entered into a listing contract with him. On July 5th an advertisement for the business appeared in the Wausau Daily Record-Herald, which stated that the inventory was offered for sale "at cost, about $35,000."

Roger Daleiden, who had been involved in several retail and wholesale enterprises both as an employee and as a self-employed businessman, answered this advertisement, and visited the store on about July 7th. He was pleased with what he saw, and interested in consummating the transaction. Two offers to purchase were made, accepted, and then withdrawn by mutual consent of the parties before a third purchase agreement was signed on July 22d. This agreement provided that the purchase price of the inventory was to be based upon its original cost. A down payment of $3,000 from Daleiden was acknowledged, and further payment of $7,700 in cash was to be made at closing. In addition, the Kleinsticks agreed to credit Daleiden with $5,300 in return for his conveyance of lake property in which he had an interest as a land-contract vendor. A further credit was to be granted for Daleiden's assumption of a floor-plan ar-

rangement which the sellers had with the bank of Edgar. The balance of the purchase price was to be secured by a mortgage on Daleiden's residence.

After this agreement the Kleinsticks immediately began to take inventory of their store, with the aid of part-time employees and Daleiden himself. A total of 103 inventory sheets were drawn up, 15 of which bore notations indicating that they had been prepared by Daleiden. The method of arriving at the cost of the inventory depended upon the type of merchandise involved. For large appliances, which were not very many in number, the original invoice was sought out and this figure used. For other items, price lists were used to determine original cost. But the majority of the merchandise in the store was costed by determining what the mark-on from original cost had been, and then subtracting this figure to arrive back at original cost. This method was used because most of the merchandise came in large volumes and was relatively inexpensive, and it would have been extremely time-consuming to seek out the original invoices on such items. Time was a factor because Daleiden wished to begin operating the store on August 1st.

The inventory at cost came to a figure in excess of $39,800. A bill of sale in this amount was given by Raymond Kleinstick to Daleiden on July 31st. Because Daleiden was concerned that this figure was higher than he had anticipated, it was agreed by the parties in a supplemental agreement dated August 1st that Daleiden's accountant, Joseph Driessen, would verify this figure by totaling up the cost of the individual items on the inventory sheets, and that the purchase price would be amended to reflect this total. Daleiden began operating the store on August 1st.

Driessen's arithmetical verification revealed an inventory value in excess of $43,000, a disparity due in part to the fact that his calculations included the value of the

floor-planned merchandise. The closing of this transaction was held on September 1st, with Daleiden represented by counsel. The amount of unpaid purchase price was determined to be $24,000, and Daleiden and his wife executed a note and mortgage for this amount. The note provided for semi-annual payments of $500 beginning on March 1, 1970, with the unpaid balance due on August 31, 1979.

Daleiden did not make the first payment on March 1st, and the Kleinsticks made several unsuccessful attempts to secure payment. They commenced a foreclosure action on June 24, 1970. The Daleidens answered and counterclaimed (as relevant to this appeal) that the Kleinsticks had fraudulently misrepresented the value of the inventory at over $40,000, when in fact it was only worth $19,400, and that they had also falsely stated on several occasions that the business had in the past produced an annual net income of $20,000.

The trial court ordered William Krause appointed as referee on August 14, 1972, after apparent agreement on this procedure during pretrial conferences. Krause was a certified public accountant whom the court had used on past occasions, and his task in this case was to determine the value of the inventory at cost. After reading the depositions previously taken, and hearing the parties and their counsel, the referee began his task of examining the inventory sheets and other data. In his report, dated August 30, 1973, he explained at length the method he had used to determine the value of the inventory at cost, made findings of fact and concluded that the costing method used by the Kleinsticks was correct.

A four-day trial was held before the court on various dates in February and March, 1974. After announcing its decision favoring foreclosure and dismissing the counterclaim by defendants, on June 11, 1974, the trial court entered findings of fact, conclusions of law, and judg-

ment of foreclosure. After motions for a new trial were denied, defendants appealed.

There are three central issues here. We agree with the trial court's disposition of each and therefore affirm. These issues are:

1. Does a party have the right, during the trial before the court, to introduce additional evidence on the issue of fact which the referee was appointed to resolve, when that party has failed to provide the referee with this evidence?

2. Was the trial court's findings that no fraudulent representations had been made regarding the value of the inventory or the annual net income contrary to the great weight and clear preponderance of the evidence?

3. Did the trial court err in refusing to grant a new trial on the basis of newly discovered evidence consisting of results of polygraph tests made after trial?

I. *Additional Evidence on the Issue of Fact Before the Referee.*

The trial court, with the assent of both parties, appointed a referee pursuant to sec. 270.34 (1) (a), Stats.[1] The referee's function was to hear and decide one of the main issues of fact in this case, namely, the value of the Kleinsticks' inventory at cost, as of August 1, 1969. The Kleinsticks provided the referee with all the business and financial data he desired, including their inventory sheets and tax records. Daleiden asserted that he had evidence which would show that the Kleinsticks had overstated the value of the inventory. However, he never produced any of that evidence for the referee, although he had ample

[1] Sec. 270.34 (1) (a). **"Trial by referee. . . .** The court may upon application of either party or of its own motion, direct a reference of all or any of the issues in the following cases:

"(a) When the trial of an issue of fact shall require the examination of a long account; in which case the referee may be directed to hear and decide the whole issue or to report upon any specific question of fact involved therein . . .".

opportunity to do so, and was requested to do so on several occasions. In fact, the referee specifically noted at the end of his carefully prepared report as follows:

"I have requested several times that Mr. Daleiden submit to me any evidence that the costing was incorrect on any of the merchandise that he purchased. As of the date of this report, I have not received one document from Mr. Daleiden."

Nevertheless, at trial, counsel for Daleiden, during his cross-examination of Ray Kleinstick, attempted to introduce into evidence a 1968 price list which had been in Daleiden's possession since the sale. The apparent aim in introducing this evidence was to show that the price of the artificial flowers on the list was less than the cost assigned to the same flowers in the Kleinsticks' inventory. The trial court sustained an objection to the introduction of this evidence on the ground that it related to the issue of inventory value, and should have been presented to the referee at the time he was deciding that issue. In the offer of proof which followed, Ray Kleinstick stated that he himself had not used price lists in valuing the inventory, and counsel for Daleiden never specifically showed any disparity between this price list and the inventory cost.

On another occasion, during the cross-examintion of Lauretta Kleinstick, counsel for Daleiden requested that she produce the individual sales slips for the store, so that it could be determined how much of the business was attributable to floor-covering sales. The Kleinsticks had not sold their floor-covering merchandise, so that Ray Kleinstick could continue in the floor-covering business. The aim in introducing this particular evidence was to gain a figure which might be helpful in arriving at the value of the nonfloor-covering inventory sold to Daleiden. The trial court sustained an objection to the introduction of this evidence on the ground that, if the

figure was in fact useful in determining the inventory value, the referee should have been asked to determine it. In the offer of proof which followed, Roger Kleinstick, the plaintiffs' son and the bookkeeper for the business, testified that he had kept only one sales account, and that his monthly ledger sheets only broke down sales into taxable and nontaxable categories (not into floor-covering sales versus sales of other merchandise).

The trial court correctly ruled in both instances that the evidence was inadmissible. Both the price lists and the sales slips bore upon the issue of inventory value, and this was the precise issue which the referee was to resolve. The purpose of appointing a referee in such matters is twofold: to save court time and to insure that a competent, trained accountant reports upon a matter peculiarly within his expertise. Both of these purposes would be ill-served by a *de novo* reconsideration of the same issue at trial.

Sec. 270.35, Stats.,[2] envisions a review by the trial court of the referee's report, and a decision whether to accept, reject, or modify this report; it does not provide for the reception of additional evidence on the very point which the referee was appointed to decide. The findings by the referee have the effect of findings of fact by a trial court, and are to be upheld unless they are contrary to the great weight and clear preponderance of the evidence.[3] From the earliest date this court has held that, in reviewing the report of a referee, the trial court is to "decide upon the return,"[4] which includes the referee's

---

[2] ". . . the court may review such report and on motion enter judgment thereon or set aside, alter or modify the same and enter judgment upon the same so altered or modified, and may require the referees to amend their report when necessary. . . ."

[3] *Wojahn v. National Union Bank* (1911), 144 Wis. 646, 129 N. W. 1068; *Ott v. Boring* (1909), 139 Wis. 403, 121 N. W. 126. *See also: Johnson v. Goult* (1900), 106 Wis. 247, 82 N. W. 139.

[4] *Learmonth v. Veeder* (1860), 11 Wis. 144 (*138), 147 (*141).

report, all of the evidence he has considered, and any exceptions taken to that report.

Of course, a party may move that the trial court vacate the entire report, and then, if his motion is granted, have a new determination of the issue, with the opportunity to introduce evidence.[5] Also, when there is excusable delay in discovering and producing evidence on the issue, a party may move that the trial court recommit the matter to the referee for additional consideration.[6] Neither of these situations is presented by the instant case. Accordingly, the trial court committed no error in ruling as it did on these attempts to offer different evidence on the very issue the referee was supposed to decide.

II. *Sufficiency of the Evidence.*

The Daleidens contend that on their counterclaim the trial court's findings that no misrepresentations were made of the value of the inventory or of the annual net income are unsupported by the evidence.

Two separate findings are involved here. First of all, the trial court found that the Kleinsticks had not falsely overinflated the value of their inventory because the inventory was in fact worth what they said it was worth. In so finding the trial court accepted the report of the referee which had concluded that the costing method used by the Kleinsticks was valid and accurate. The findings of a referee, when confirmed by the trial court, become the findings of the trial court, and our standard of review is the familiar one of whether such findings are contrary to the great weight and clear preponderance of the evidence.[7]

The finding of the referee that the value of the inventory at cost was as represented by the Kleinsticks is not

[5] *Sullivan v. Sullivan* (1904), 122 Wis. 326, 99 N. W. 1022; *Fairbanks v. Holliday* (1883), 59 Wis. 77, 17 N. W. 675.

[6] *Murphey v. Shepardson* (1884), 60 Wis. 412, 414, 19 N. W. 356.

[7] *MacPherson v. Strand* (1952), 262 Wis. 360, 366, 55 N. W. 2d 354; *Mohs v. Quarton* (1950), 257 Wis. 544, 547, 44 N. W. 2d 580.

against the great weight and clear preponderance of the evidence. The referee's report is carefully prepared and his findings persuasively presented. The Kleinsticks' basic method had been to specifically identify the cost of their large expensive items by reference to the original invoice, to use price lists where available, and, for the great mass of their merchandise, to subtract from the retail price the mark-on in order to arrive at cost. The method of determining cost from original invoices is known as the specific identification method, and it is widely accepted for tax purposes in the accounting profession, especially "where the individual units possess relatively high values."[8] The principal method employed by the Kleinsticks had as its basic assumption that the cost of inventory items could be determined by subtracting from the known retail price a figure equal to the mark-on from cost in order to arrive back at cost. This is the basic assumption of what is known as the retail inventory method, which has broad acceptance in the accounting profession.[9]

The referee determined the mark-on which the Kleinsticks had used both as a percentage of cost and a percentage of selling price, and for different classes of goods (small appliances, paint brushes, all other inventory items). In order to verify the accuracy of this method and these percentages, the referee compared the cost figure derived by this method with actual invoices. His sampling consisted of random selections from 95 of the 103 inventory sheets. He included in his final report

---

[8] R. Wixon, et al., eds., *Accountants' Handbook* (5th ed. 1970), "*Inventories—Cost Pricing Methods*," sec. 12–36. *See also:* W. Pyle and J. White, *Fundamental Accounting Principles* (3d ed. 1963), "*Accounting for an Inventory at Cost*," p. 343.

[9] *APB Accounting Principles* (1968), Vol. One, p. 3054, sec. 5121.06; 135–136 Journal of Accountancy (July, 1973), 69, 73; Federal Tax Regulations (1975), sec. 1.471–3 (d), sec. 1.471–8 (a) through (c); R. Wixon, et al., *supra,* footnote 8, "*Inventories— Retail Pricing Method*," sec. 12–57; W. Pyle and J. White, *supra,* footnote 8, "*Estimated Inventories—Retail Method*," p. 348.

more than a dozen of these comparisons which reveal that this method was an accurate way of determining cost. Indeed, in many cases the actual cost of the item according to the invoice was greater than the derived cost figure.

The second finding challenged by the Daleidens concerns the alleged representation that the business netted about $20,000 per year. Here the question is not the truth or falsity of this alleged representation, since it is conceded that the $20,000 figure is not true. The question is whether or not the representation was ever made, either by the Kleinsticks or by their real-estate agent, Archie Newton. The resolution of this question depended entirely upon a decision as to the credibility of the principal witnesses, since the Kleinsticks, Newton, and Daleidens flatly contradicted each other in this regard. The trial court realized at the outset of this lengthy trial that the "crucial issue" was "who is to be believed," and so "paid particular attention to the testimony of all witnesses." In rendering its decision the court found that "the scales of credibility tip heavily in favor of the plaintiffs," and specifically found that neither the Kleinsticks nor anyone acting in their behalf represented to Daleiden that the business netted $20,000 per year.

It is well settled that the weight of the testimony and the credibility of the witnesses are matters peculiarly within the province of the trial court acting as the trier of fact.[10] The reason for such deference is the superior opportunity of the trial court to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony. We have examined at length the voluminous record in this case, and conclude that the trial court's finding that the $20,000 representation was never made

[10] *Posnanski v. West Allis* (1973), 61 Wis. 2d 461, 213 N. W. 2d 51; *Trible v. Tower Ins. Co.* (1969), 43 Wis. 2d 172, 168 N. W. 2d 148; *Berlinski v. Telisky* (1968), 39 Wis. 2d 191, 158 N. W. 2d 925.

is not against the great weight and clear preponderance of the evidence.

The appellants' reliance upon *Beiler v. Krnak*[11] to support their challenge to the trial court's finding is misplaced. That case involved the sale of a resort business in which the trial court specifically found that the sellers had falsely represented their annual net income. The finding in this case is exactly opposite, namely, that the sellers did not misrepresent annual net income, and so the standard of review on this appeal cuts in favor of, and not against, the sellers.

The trial court believed the testimony of Ray, Lauretta, and Roger Kleinstick that neither they nor anyone else in their presence had ever made such a representation. Other witnesses, all long-time residents of Edgar, testified that the Kleinsticks had a very good reputation for honesty and truthfulness. The trial court disbelieved the testimony of Daleiden that both the Kleinsticks and Newton had used the $20,000 figure, and the testimony of Newton that he had procured the figure from the Kleinsticks and used it in his sales pitch. The trial judge disbelieved this testimony because he found the contrary testimony of the Kleinsticks more credible, and because, in regard to Newton, there were several inconsistencies and contradictions in his overall testimony. For example, Newton stated that he had left the real-estate business in order to retire, and was then forced to retract that statement when evidence was introduced which revealed that he had given up his broker's license just before a hearing by the real estate examining board upon a complaint charging misuse of clients' trust funds. Newton first testified that he had not discussed the case with Daleiden prior to trial, then later testified that he had spent an hour with Daleiden and his attorney discussing the case. On June 2, 1970, Newton signed a statement

---

[11] (1956), 273 Wis. 85, 76 N. W. 2d 545.

prepared by Daleiden's attorney in which he asserted that the Kleinsticks had told him that the inventory was worth about $25,000, and then at trial testified that this was not true and that the statement was incorrect. Under these circumstances it cannot be said that the trial court's rejection of Newton's testimony on this point was unwarranted.

In *Posnanski v. West Allis*[12] we described the trial judge as "the ultimate arbiter of the credibility of a witness," and stated that the trial judge's decision in this regard will not be disturbed unless his finding is based upon "caprice, an abuse of discretion, or an error of law."

Appellants place great emphasis upon the fact that the Kleinsticks lost both copies of the original listing contract, and that they admitted that one of these copies, brought to them at their request by Newton, contained the statement about $20,000 annual income. The Kleinsticks did testify that they lost their own copy of the listing contract, probably in the August, 1969 move from their store, and that they requested that Newton bring them his copy when they first heard to their surprise that Daleiden was claiming he had been told the business netted $20,000 per year. They also testified that they were flabbergasted when they discovered that Newton's copy contained this figure, since they had never at anytime used such a figure. This second copy was also not produced at trial, and the Kleinsticks testified that it had been lost. The appellants broadly imply that the loss of this evidence was part of a conscious plan by the Kleinsticks to destroy evidence harmful to their case. However, if this were so, they would hardly have come forward at trial and freely testified that, when they received this second copy in the fall of 1971 or in 1972, it contained the $20,000 figure. The important point to

[12] *Supra*, footnote 10, at pages 465, 466.

note is that Daleiden testified explicitly that he had never seen the listing contract, and so, no matter what was on it, this document was not relied upon by the buyers.

III. *Admissibility of Results of Polygraph Tests.*

After the trial court announced its decision in May, 1974, counsel for Daleiden had both Daleiden and Newton take polygraph tests, which tests allegedly showed that Daleiden and Newton told the truth at trial both as to the inventory value and as to the representations made concerning the annual net income of the store. Daleiden then moved for a trial on the basis of this newly discovered evidence. This is not newly discovered evidence on the basis of which the trial court could have ordered a new trial. We therefore affirm the trial court in its denial of the motion and we do not reach the question of to what extent polygraph test results are admissible in the trial of a civil lawsuit.

*By the Court.*—Judgment affirmed.