IN RE the MARRIAGE OF: Clair WIEDERHOLT, Petitioner-Appellant,†

v.

Bonnie FISCHER, Respondent-Respondent.

Court of Appeals

*No. 91-2355. Submitted on briefs April 28, 1992.—Decided May 20, 1992.*

(Also reported in 485 N.W.2d 442.)

†Petition to review denied.

526

527

On behalf of petitioner-appellant, the cause was submitted on the briefs of Clair Wiederholt, *pro se.*

On behalf of respondent-respondent, the cause was submitted on the brief of *James Wedemeyer* of *Dewane, Dewane, Kummer & Lambert* of Manitowoc.

A brief was submitted by guardian ad litem *Robert J. Zeman* of *Muchin, Muchin & Bruce, S.C.* of Manitowoc.

Before Brown, Anderson and Snyder, JJ.

ANDERSON, J.  Clair Wiederholt and Bonnie Fischer are divorced and have three children. Clair appeals from an order denying his motion to transfer primary physical placement of the three children to him. He also appeals the portion of the order that altered the temporary placement portion of the divorce judgment and required that he contribute to Bonnie's attorney's fees. Because we conclude that the trial court did not abuse its discretion, we affirm.

At the time of the filing of the divorce in 1985, Natasha was ten; Carissa was seven; and Ruscena was six. Primary physical placement of the three children was intensely disputed during the pendency of the divorce action. Some time after the filing of the divorce action, Bonnie and the three children moved from

528

Waunakee, Wisconsin to Manitowoc, Wisconsin. A temporary order gave Bonnie primary physical placement. During this time, the girls were reluctant to go with Clair for temporary placement and would run away and climb trees when he came to pick them up.

Clair and Bonnie were divorced in February 1987 by Dane County Circuit Court Judge Mark A. Frankel. The court found both parents fit to have the care, custody and control of the children. The court gave Bonnie primary placement of the three children and Clair received reasonable rights of temporary placement.

The temporary placement guidelines in the divorce judgment were specified in detail and were based on the recommendation of the guardian ad litem and the psychologists. After the divorce, both Clair and Bonnie filed numerous motions with the trial court alleging that the other was in contempt for failing to follow the divorce judgment and subsequent orders. The motions and affidavits detailed specific actions allegedly taken by each party toward the children and claimed that such actions were detrimental to the children. The motions dealt with accusations involving what the parties told the children, whether photographs could be taken of the children, problems with the pick-up and drop-off time and locations, problems with telephone contact, and issues over the children's clothes and toys. Their disputes eventually were transferred to Manitowoc county because the children resided in Manitowoc county.

In July 1990, Clair moved the court to transfer the primary placement of the three children to him. The basis for Clair's motion was that the children suffered from "Parental Alienation Syndrome," the condition was caused by Bonnie, and the only cure was to transfer primary placement of the children to him.

A three-day trial was held before circuit court Judge Fred H. Hazlewood. The court found that the three children were alienated from their father and that the alienation was attributable to both parents. The court denied Clair's motion to change primary placement because it was not in the children's best interests. The court also found that due to the history of the case, a rigid temporary placement schedule was in the children's best interests and altered the temporary placement schedule. The court also declined to order counseling for the parties or the children. Clair appeals.

The main issues in this case concern the trial court's physical placement decisions. A court has wide discretion in making physical placement determinations. *See Bohms v. Bohms,* 144 Wis. 2d 490, 496, 424 N.W.2d 408, 410 (1988). The exercise of discretion will not be upset unless it represents a clear abuse of discretion or unless the court misapplied the law. *Id.*

The trial court's exercise of discretion in revising physical placement after two years from the initial physical placement order is controlled by sec. 767.325(1)(b), Stats. The court may make a modification if it finds that (1) the modification is in the child's best interest and (2) there has been a substantial change in circumstances since the entry of the last order substantially affecting physical placement. *Id.* There is a rebuttable presumption that continuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the child's best interest. Section 767.325(1)(b)2b.

What is in the child's best interest is a mixed question of law and fact, with the determination of such

matters as psychological factors being a question of fact. *Pamperin v. Pamperin,* 112 Wis. 2d 70, 75, 331 N.W.2d 648, 651 (Ct. App. 1983). Findings of fact will not be set aside unless clearly erroneous. Section 805.17(2), Stats. Questions of law ordinarily are reviewed independently. *Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). In cases where the trial court's legal conclusion is so intertwined with the factual findings, as here, this court will give weight to the trial court's decision. *Id.*

The first issue is whether the trial court abused its discretion when it refused to transfer primary placement to Clair. Clair argues that because the trial court found the children were alienated from him, the court erred in concluding that it would not be in the children's best interests to transfer primary placement to him to cure the syndrome.[1] Clair's expert, Dr. Gerald Wellens, concluded that both Carissa and Ruscena "severely" suffered from the syndrome and have "one of the worst cases I've ever seen in doing this kind of work."[2] Wellens stated that he was "positive" that Bonnie was the cause of the syndrome. Wellens opined that the only remedy was to place the children with Clair.

The trial court acknowledged that Wellens was a respected psychologist and the court respected his opinions. However, the court rejected Wellens' recommended

---

[1] According to Clair's expert witness, "Parental Alienation Syndrome" can be one of four types: (1) one parent actively brainwashing or manipulating the feelings of a child concerning the other parent, (2) one parent unconsciously rewarding a child for turning his or her affections away from the other parent, (3) a child alienating himself or herself on the basis of fear of loss of love, and (4) a child alienating himself or herself because of certain situational factors.

[2] Only the two younger girls were evaluated by the expert.

cure of placing the children with Clair. The court pointed out that Wellens admitted that transferring primary placement involved uncertain risks. The court acknowledged that the long-range negative effects of the alienation will exist, but the high degree that Wellens described is speculative. Such a transfer may jeopardize the children's progress in school and relationships with friends.[3] Wellens' testimony itself indicated that the cure is controversial and that there is limited research data to support the success of transferring the children to the "hated" parent. The court concluded that the evidence was not strong that the alienation would be cured by placing the children with Clair.

The trial judge interviewed the children and found that they do not like their father and do not want to live with him. One child told the judge that her feelings came from her own observations. Because the children are "adamantly" opposed to living with Clair, the court stated that the potential risk of harm to the children outweighed the questionable benefits of transferring placement. The court concluded that the cure proposed by Clair presented too high of a risk of harm.[4]

---

[3]Clair argues that the court ignored Clair's- willingness to move close to the children and based its decision on the assumption that the children would have to move to Waunakee. The court did not mention in its oral or written decision Clair's willingness to move. However, because Clair's testimony revealed that he had done very little to look for new jobs in the Manitowoc area, the court could have properly discounted Clair's testimony that he was willing to move.

[4]In his brief, Clair cites case law which states that personal preference of a child is not a controlling consideration on the issue of custody. *See, e.g., Haugen v. Haugen,* 82 Wis. 2d 411, 417, 262 N.W.2d 769, 772 (1978). A review of the court's decision shows that the children's wishes to stay with Bonnie did not control the court. Furthermore, even though the children's stated

Based on the weighing of all the evidence, the court found that the cure proposed by Clair was not better than the current primary placement with Bonnie. The court found that the psychological impact on the children is risky and uncertain. These findings are not clearly erroneous. These findings more than adequately support the court's conclusion that the best interests of the children would not be served by a transfer of placement. Therefore, the court did not abuse its discretion.[5]

Clair repeatedly stresses that the cure advocated by Wellens was uncontradicted and that the court erred by not accepting it. The weight of the testimony is peculiarly within the province of the trial court acting as the trier of fact. *Kleinstick v. Daleiden,* 71 Wis. 2d 432, 442, 238 N.W.2d 714, 719–20 (1976). A court is not obliged to

wishes were consistent with the syndrome, the weight of their testimony and their credibility are matters peculiarly within the province of the trial court acting as the trier of fact because of the court's superior opportunity to observe the demeanor of the children and to gauge the persuasiveness of their testimony. *See Kleinstick v. Daleiden,* 71 Wis. 2d 432, 442, 238 N.W.2d 714, 719–20 (1976).

[5]In reaching its decision, the trial court examined both Clair's and Bonnie's personalities and roles in the ongoing dispute. The court pointed out that both were blameworthy for the children's alienation. The court expressed equal disapproval for each party's actions toward each other and of their ongoing tactics to place the children in the middle of their anger toward one another. There are no winners in this case and the children stand to lose the most. We stress this point so that the trial court's and this court's decisions are not seen as rewarding one parent over the other. Both courts' concern is with the best interests of the children under the circumstances and cannot be interpreted to endorse one parent's behavior over the other's.

adopt uncontradicted testimony if there is other evidence in the case that renders it unreasonable. *See Peterson v. Peterson,* 126 Wis. 2d 264, 266, 376 N.W.2d 88, 89 (Ct. App. 1985). As summarized above, Wellens' testimony itself provides for a basis to reject the cure in this case. Wellens' testimony indicated that the cure was controversial, there is limited research data, and there are uncertain risks. Furthermore, the testimony of both parents and the children was other evidence that the cure advocated by Wellens would not be successful and was unreasonable. Therefore, we cannot find error in the court's refusal to accept Wellens' opinion.

The second issue is whether the trial court abused its discretion when it revised temporary placement.[6] Clair argues that there was no basis for the revision.

Our review of the record indicates that the parties' past behavior is a substantial basis for the trial court's revision. The revision was necessitated by the parties' demonstrated inability to work under the temporary placement schedule. The new order requires bus transportation of the children to and from Waunakee through Milwaukee. This is a reasonable response to the parties' inability to work out details concerning pick-up and drop-off times and locations. Because the bus was to be used for transportation, a revision of the time when placement began and ended was required. This cut into the time Clair could spend with the children. Finding that the children need to "unwind from school" on Fri-

---

[6]Clair claims that the trial court denied him period of placement with Natasha within the meaning of sec. 767.325(4), Stats. The court did not deny Clair placement with Natasha at all. The court stated that Natasha could participate in placement if she wished. The court reasoned that Natasha was a teenager and "teenagers go where they want to go."

day before traveling to their father's home is reasonable.[7] Fashioning a placement schedule to account for the children getting older and becoming more involved with school activities and friends also is reasonable.

Because the parties have demonstrated a refusal or an inability to work within the original placement guidelines, a rigid schedule was required. Clair fails to recognize that because of the past behavior of both parties, they both gave up the flexibility of the schedule, necessitating a rigid schedule with the accompanying inconveniences. It was not an abuse of discretion for the court to conclude that any harm to the children from less time with Clair is outweighed by the stability of a rigid placement schedule. The parties' past behavior provides a substantial basis for revising the temporary placement order. We cannot disagree with the court that the revised schedule is in the children's best interests.

Clair also argues that the trial court erred in failing to order counseling for the children and the parents. We do not find an abuse of discretion. The children and the parents have gone through extensive counseling. Although there was minimal progress, the court reasonably could have concluded that more counseling would be nonproductive.

---

[7]Clair complains about the trial court's statements about "winding down" and that "teenagers go where they want to go." Factfinders are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life. *See De Keuster v. Green Bay & W. R.R. Co.,* 264 Wis. 476, 479, 59 N.W.2d 452, 454 (1953). Factfinders are to apply them to the evidence or facts at hand to the end that their action may be intelligent and their conclusions correct. *Id.* The trial judge's reference to his experiences was not error.

The third issue is whether the trial court abused its discretion in awarding Bonnie $1500 toward her attorney's fees. Awarding attorney's fees is within the discretion of the trial court and will not be altered on appeal unless that discretion is abused. *Kastelic v. Kastelic*, 119 Wis. 2d 280, 290, 350 N.W.2d 714, 719 (Ct. App. 1984). The trial court must make findings of need, ability to pay, and the reasonableness of the fees. *Id.* The court considered all the relevant factors and we conclude that the findings are not clearly erroneous. Section 805.17(2), Stats.

We briefly address another of Clair's arguments. He argues that the guardian ad litem fundamentally misunderstood his duties to the children. We agree. The guardian ad litem described his duties as representing and advocating the children's wishes. In the appellate brief, he stated that the children are his "clients." However, sec. 767.045(4), Stats., clearly states that the guardian ad litem shall be an advocate for the *best interests* of a minor child and that the guardian ad litem shall not be bound by the wishes of the minor child. This means that the guardian ad litem does not represent a child *per se.* Rather the guardian ad litem's statutory duty is to represent the *concept* of the child's best interest. In advocating for this concept, the guardian ad litem acts in the "same manner as an attorney for a party to the action." *Id.* Advocating this concept may require advocating something contrary to the child's wishes. By concentrating on the child's wishes, the guardian ad litem may miss his or her obligation—to fully examine and advocate the child's best interest. To fulfill the statutory obligation, the guardian ad litem must see himself or herself as representing the concept of the child's best

interest. In this case, because the children's wishes were ultimately consistent with the children's best interests, the guardian ad litem's misconception does not require further proceedings.

*By the Court.*—Order affirmed.